UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case. No. 20-CV-650-CVE-JFJ ) |
| HAYDEN UMDENSTOCK, JENNIFER UMDENSTOCK, as parent and legal guardian of T.U., a minor, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Unum Life Insurance Company of America filed an interpleader complaint on December 9, 2020 to determine the rightful beneficiary of a life insurance policy on the life of Zachary Umdenstock (decedent). Dkt. # 2. The complaint alleged that there are competing claims to the proceeds of the decedent's policy benefit, due to the possible application of Oklahoma's slayer statute, which would operate to preclude defendant Hayden Umdenstock from receiving his half of the policy proceeds. Id. at 4-5. The interpleaded funds were deposited in this Court on February 26, 2021, Dkt. # 16, and plaintiff Unum Life was dismissed from the case on May 19, 2021, Dkt. # 24.

Attorney Allen Smallwood first entered a special appearance on behalf of Benjamin Umdenstock, personal representative of the decedent's estate, on March 1, 2021. Dkt. # 17. In a motion requesting transfer of interpleaded funds to the Tulsa County probate court, Smallwood asserted that Hayden's share of the decedent's life insurance proceeds is an asset of the probate estate. Dkt. # 18, at 1-2. The Court denied Smallwood's motion. Dkt. # 21. In the order denying the motion, the Court admonished Smallwood for filing a motion on behalf of a nonparty, asserting legal theories without citation to authority, and attempting to appropriate interpleaded funds from

the two named beneficiaries—a minor child and an adult who had been found not guilty of first-degree murder only by reason of mental illness. Id.

On June 1, 2021, Smallwood again entered an appearance—this time on behalf of Hayden. Dkt. # 25. Smallwood, who represented Hayden in the criminal case for Zachary's murder, attached a signed authorization from September 15, 2020, in which Hayden conveyed his interest in insurance proceeds to Smallwood in exchange for the legal fees incurred from defending Hayden's first-degree murder charge. Dkt. # 25-1. On October 6, 2021, Smallwood filed a motion on Hayden's behalf, seeking disbursement of the interpleaded funds to Hayden or, in the alternative, to the Tulsa County probate court. Dkt. # 26. Smallwood's most recent motion asserts that the slayer statute arguably does not apply to the interpleaded funds because Hayden was found not guilty of decedent's murder by reason of insanity. Dkt. # 26, at 3-5. In the alternative, Smallwood, again, asserts without citation to authority that the interpleaded funds should be transferred to Tulsa County probate court for disbursement according to the orders in that proceeding. Id. at 5 ("[T]he court is obligated to either pay directly to Hayden . . . or to order the United States District Court Clerk to transfer those proceeds to the Tulsa County Probate Court Clerk (Case No. PB-2019-440) for the probate court to determine to whom those proceeds should be disbursed.").

## I.

As a preliminary matter, the Court first addresses Smallwood's attempt to simultaneously represent Hayden as well as Zachary's estate in this case. The issue of Hayden's competency and his representation in this matter was first raised by Unum. See Dkt. # 19, at 2 ("available public records are not clear regarding Hayden Umdenstock's current capacity"); Dkt. # 23, at 1 ("Unum Life has noted issues regarding the competency of the parties and their representation"); see also

Dkt. # 20 (Unum's proof of service on Hayden c/o Oklahoma Forensic Center in compliance with Fed. R. Civ. P. 4(g)). The Court has also acknowledged the issue of Hayden's capacity to be represented in this matter. Dkt. # 21, at 2.

To date, the only information presented to the Court by the parties in this case regarding Hayden's capacity is an order in Hayden's Tulsa County criminal case in which Hayden was adjudicated mentally ill and ordered to be held in custody until the court makes a "determination that he is not . . . a person requiring treatment." Dkt. # 26-2, at 3. According to OSCN, the court in Hayden's criminal case, State v. Umdenstock, Case No. CF-2018-5696 (Tulsa Cnty.), filed Dec. 12, 2018) (OSCN), has not made any such finding.[1] To the contrary, the most recent order in Hayden's criminal case was filed on May 27, 2021, in which the court found Hayden to be "presently a mentally ill person as defined by Title 43A of the Oklahoma Statutes," and committed him to custody of the Oklahoma Department of Mental Health and Substance Abuse. See Order, Umdenstock, Case No. CF-2018-5696, OSCN Doc. No. 1049685797, at 2, filed on May 27, 2021. Given the information available, the Court in this case will yield to the state court's findings regarding Hayden's mental health and incapacitation. Fed. R. Civ. P. 17(b)(1) ("Capacity to sue or be sued is determined . . . by the law of the individual's domicile.").

Under Fed. R. Civ. P. 17(c)(1), only a general guardian, a committee, a conservator, or a "like fiduciary" may represent an incompetent person in a cause of action. When an incompetent person is not represented in a case, "[t]he court must appoint a guardian ad litem—or issue another appropriate order—" to protect the interests of that person. Fed. R. Civ. P. 17(c)(2). The Tenth Circuit has held that the appointment of a guardian ad litem under Rule 17(c)(2) is within the

---

[1] "Federal Rule of Evidence 201 authorizes court to take judicial notice of adjudicative facts at any stage of the proceedings, and in the absence of a request of a party." Zimomra v. Alamo Rent A Car, Inc., 111 F.3d 1495, 1503 (10th Cir. 1997).

3

discretion of the court. Allstate Ins. Co. v. Brown, 920 F.2d 664, 672 (10th Cir. 1990). ("We read this language to commit the matter of the appointment of a guardian ad litem to the discretion of the district court.").

Here, it appears that Smallwood has simply attempted to enter his appearance on Hayden's behalf without ever addressing the issue of Hayden's competency. However, neither this Court nor any other court has appointed an attorney to represent Hayden in this matter or in any other civil matter.[2] Furthermore, there is no evidence that a guardian, a committee, or a conservator was appointed to represent Hayden in this case.

Smallwood's participation in this case is perhaps best understood as an attempt to collect his legal fees for representation of Hayden in his criminal case, which is underscored by the document submitted that purportedly assigns Hayden's share of the insurance proceeds to Smallwood. Dkt. # 25-1. This would also explain Smallwood's insistence on transferring the interpleaded funds to the Tulsa County probate case, given that Smallwood represents the personal representative of Zachary's estate and has stated his intention of addressing the matter of Hayden's legal fees in the probate case. See Letter from Allen Smallwood, In re Estate of Umdenstock, Case No. PB-2019-440, OSCN Doc. No. 1048518172, (Tulsa Cnty.), filed on January 26, 2021 ("[Hayden] has signed the necessary documents to authorize the personal representative in this case, Benjamin Umdenstock, to use those [interpleaded] funds to disburse his legal expenses. . . . Please let me know if, procedurally, that can be accommodated by your court."). Thus, while the Court does not recognize Smallwood as representing Hayden in this case, it nevertheless permits

---

[2] The Court also notes that, while Smallwood did represent Hayden in the criminal case, Smallwood's entry of appearance in that case states he was retained by "defendant's family." See Entry of Appearance and Motion to Continue Jury Trial and Discovery Exchange Dates, Umdenstock, Case No. CF-2018-5696, OSCN Doc. No. 1045694549, at 1, filed on Dec. 26, 2019.

Smallwood to remain in this case and proceed as a third-party claimant whose right to the interpleaded funds is derivative of Hayden's.[3]

Additionally, after careful consideration, the Court finds that it is not necessary to appoint a guardian ad litem for Hayden in this case. There are three reasons for this. First, the only other named party is T.U., whose mother and legal guardian, Jennifer Umdenstock, has not entered an appearance or otherwise responded to the litigation in this case. Consequently, if the Court were to appoint a guardian ad litem for Hayden, it would likewise need to appoint separate guardian ad litem to ensure that T.U.'s interests are adequately protected. Second, the amount in controversy is $16,500.05, which is a relatively small amount—especially when factoring in the guardian ad litem fees that would be deducted from that amount. Third, this case presents a simple issue for the Court to determine, namely, whether Oklahoma's slayer statute operates to preclude Hayden from receiving his share of his father's life insurance proceeds.

## II.

The Court now turns to Smallwood's motion requesting distribution of the interpleaded funds. Under Oklahoma law, a named beneficiary of a life insurance policy has the burden of proving by a preponderance of evidence: (1) the existence of the insurance contract; (2) the death of the insured; and (3) his status as a beneficiary of the policy. State Mut. Life Assur. Co. of Am. v. Hampton, 696 P.2d 1027, 1034 (Okla. 1985); Matter of Estates of Young, 831 P.2d 1014, 1016 (Okla Civ. App. 1992). Once a named beneficiary establishes his prima facie right to recover under the insured's policy, other claimants to the policy proceeds may assert the slayer statute as an

---

[3] The Court notes the questionable propriety of representing in this action the decedent's personal representative in the Tulsa County probate case, as well as the person charged in the Tulsa County criminal case with killing the decedent. It appears that the interests of the decedent's estate are in conflict with the interests of a potential predeceased heir.

5

affirmative defense to bar the named beneficiary from recovering the insurance proceeds. Young, 831 P.2d at 1016.

Oklahoma's slayer statute states in relevant part that "[n]o beneficiary of any policy of insurance . . . who in the like manner takes, causes or procures to be taken the life upon which such policy certificate is issued . . . shall take the proceeds of such policy or certificate . . . ." Okla. Stat. tit. 84, § 231. Oklahoma courts have consistently held that the slayer statute, as codified under § 231, is merely an extension of the common law rule that bars a beneficiary "from benefitting by his own wrongdoing." United Presidential Life Ins. Co. v. Moss, 838 P.2d 1011, 1014 (Okla. Civ. App. 1992); Hampton, 696 P.2d at 103 ("§ 231 does not preclude judicial application of the common law rule . . . in cases where the beneficiary has not been convicted of the crime."); Young, 831 P.2d at 1015-16 ("a beneficiary's acquittal is not conclusive on the issue of whether the beneficiary took, or caused to be taken, the insured's life in such a manner as to constitute felonious, intentional, unjustifiable homicide"). Thus, the outcome of a criminal proceeding arising from the death of the insured is not dispositive of whether the slayer rule applies.

Here, it is not disputed that Zachary was enrolled in a basic life insurance policy and an accidental death and dismemberment policy through his employer's group plan, and that that total combined amount of Zachary's insurance policies was $30,000. Dkt. # 2, at 3; Dkt. # 26, at 1. It is also not disputed that Zachary died on December 7, 2018. Dkt. # 2, at 4; Dkt. # 26, at 1. Finally, it is not disputed that Hayden is one of the two named beneficiaries of Zachary's insurance policy, and that Zachary directed half of the $30,000 policy to be paid to Hayden upon Zachary's death. Dkt. # 26, at 1; Dkt. # 2 at 3. Accordingly, there is no dispute that Hayden has established a prima facie right to Zachary's insurance proceeds.

While it had no stake in the outcome, Unum brought the interpleader complaint because Hayden's right to recover Zachary's insurance proceeds was likely implicated by Oklahoma's slayer rule. Dkt. # 2, at 4. Smallwood's October 6, 2021, motion to disburse funds asserts that the slayer rule does not apply, arguing that an "acquittal" of first-degree murder charges "requires a finding that the . . . mens rea . . . could not be established due to the lack of the accused's ability to understand right from wrong." Dkt. # 26, at 4. From this, Smallwood argues that the finding of not guilty by reason of mental illness in Hayden's criminal case demonstrates that Hayden "was not capable of forming the necessary felonious criminal intent due to his extreme psychosis and schizophrenic delusions requiring his acquittal." Id. at 4-5. Smallwood cites Hampton for the proposition that the slayer rule applies when the life is taken "in such a manner as to constitute a felonious, intentional, or unjustifiable homicide." Dkt. # 26, at 4.

Smallwood misses the point of the Oklahoma Supreme Court's decision in Hampton. Hampton involved a life insurance beneficiary who was charged with first-degree murder and the lesser-included offense of first-degree manslaughter. 696 P.2d at 1029. After litigating the criminal charges, the beneficiary was acquitted of all counts charged. Id. The beneficiary then attempted to claim interpleaded funds stemming from the decedent's life insurance proceeds, arguing that her acquittal was dispositive of her right to the interpleaded funds. Id. The Hampton court held that the criminal acquittal was not dispositive of whether the Oklahoma slayer rule applied to the case because (1) the standard of proof required in a criminal matter is higher than a civil case, and (2) the other heirs and/or beneficiaries were not a party to the criminal proceeding, thus depriving them of due process. Id. at 1029.  Thus, not only does Hampton stand for the opposite of what

Smallwood argues, but also the beneficiary in Hampton was acquitted of the criminal charges on the merits—not by virtue of an affirmative defense or an agreement with the State.[4]

Even reviewing Smallwood's motion in light of Hayden's mental illness fails to dispel application of the slayer rule. The Oklahoma Court of Civil Appeals held that the rule in Hampton extends to cases in which a beneficiary is found not guilty of murder only by reason of mental illness. Young, 831 P.2d at 1016 ("Appellee's acquittal by reason of insanity was not conclusive proof that he did not commit the murders."). Smallwood points to "three qualified psychological/psychiatric examinations" performed on Hayden to support state court's verdict of not guilty by reason of mental illness. However, this Court has not seen the reports nor have the reports been made available for this Court's review; what is more, those reports—in addition to large swaths of sealed documents in Hayden's criminal case—have not been subject to the adversarial scrutiny of civil discovery and cross-examination. Finally, and perhaps most importantly, the verdict in Hayden's criminal case is only that Hayden "was unable to form the necessary felonious intent to be found guilty of this criminal allegation." Dkt. # 26-2, at 2 (emphasis added). Hayden was charged with first-degree murder only, and therefore, the court's findings apply only to the mens rea for that crime.

Smallwood argues in the alternative that "there is equal validity to the argument that these insurance proceeds are a matter of contract law, or alternatively, that they are an asset of the estate and should be distributed through the probate court." Dkt. # 26, at 5. Neither of those arguments is valid. First, application of the slayer statute is a matter of contract law only insofar as it relates to the existence of a contingent beneficiary. Unum's complaint expressly states that T.U. is the

---

[4] The Court notes that the verdict of not guilty of first-degree murder only by reason of mental illness was entered by agreement between Hayden's counsel and the State. Dkt. # 26-2, at 1.

contingent beneficiary of Hayden's share, Dkt. # 2, at 3, a point never disputed by Smallwood; thus, the Court sees no contractual issues to resolve. Second, as a "payable on death" policy, the interpleaded funds are not an asset of Zachary's estate. The only instance in which insurance proceeds become an asset of a decedent's estate is when the slayer rule applies and there is no contingent beneficiary listed in the policy. Moss, 838 P.2d at 1014 ("It would be incongruous to argue that one who takes the life of the insured may not benefit directly from the proceeds, but may, by the same wrongful act, indirectly dictate how those proceeds are to distributed."). Accordingly, Smallwood's alternative theory for disbursement of the interpleaded funds is of no avail.

### III.

Application of the slayer rule as an affirmative defense requires only a preponderance of evidence. Hampton, 696 P.2d at 1034. Here, there is sworn testimony of Broken Arrow police officer, Barry Pickup, who questioned Hayden regarding Zachary's whereabouts on the day Zachary's body was found. See Transcript of Preliminary Hearing on June 12, 2019, Umdenstock, Case No. CF-2018-5696, OSCN Doc. No. 1045478214 (Tulsa Cnty.), filed on Nov. 25, 2019. According to Officer Pickup, Hayden initially lied to the officer, denying that he knew where his father was and telling the officer that Zachary's "girlfriend had come by earlier and picked him up." Id. at 10. Hayden also denied knowing his father's phone number when the officers offered to call him, and according to the officer's testimony, Hayden rebuffed efforts to check for Zachary in the residence, where the body was eventually found. Id. at 9-13. The officer testified that Hayden stated, "you guys are invading my property, if you want in, come back with a warrant." Id. at 11. The officer further testified that, when he eventually prevailed upon Hayden to allow officers into the residence, Hayden confessed to killing his father after an altercation between the two on the

evening of the murder. Id. at 15. There is no question that Hayden's conduct was wrongful, and Hayden's attempts to conceal his actions from law enforcement—coupled with his ostensibly erudite knowledge of the Fourth Amendment—evince an understanding of the nature of his conduct. No reasonable factfinder would construe Hayden's actions as blameless and deserving of a benefit that would be otherwise barred under the slayer statute.

Having considered Smallwood's motion to disburse the funds (Dkt. # 26) to Hayden or the Tulsa County probate court, and having reviewed the available evidence, the Court finds that, as a matter of law, Smallwood's motion to disburse the funds should be denied. Additionally, the Court finds that no reasonable juror, given the available evidence, would rule in Hayden's favor. Accordingly, the interpleaded funds should be disbursed to T.U., the only contingent beneficiary of Zachary's insurance policy. Moss, 838 P.2d at 1014 (Oklahoma follows the majority rule that, when the slayer statute does apply, the insurance proceeds are paid to the policy's contingent beneficiaries, if any are named).

**IT IS THEREFORE ORDERED** that Smallwood's motion to disburse funds (Dkt. # 26) is denied.

**IT IS FURTHER ORDERED** that the interpleaded funds deposited in this Court on February 26, 2021, plus any accrued interest, shall be disbursed to T.U., c/o Jennifer Umdenstock as representative of T.U.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send a copy of this order to the last known address of Jennifer Umdenstock:

> Jennifer Umdenstock
> Representative of T.U.
> 4149 Riverside Drive
> Tulsa, OK 74105

and that the Clerk of Court endeavor to locate a current address for Jennifer Umdenstock.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send a copy of this order to the Oklahoma Department of Mental Health and Substance Abuse Services, the last known custodian of Hayden Umdenstock:

Hayden Umdenstock
c/o Oklahoma Department of Mental Health
and Substance Abuse Services
2000 N. Classen Blvd., Suite 2-600
Oklahoma City, OK 73106

**DATED** this 19th day of November, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE